GANOW, Respondent, v. ASHTON, Appellant.

(143 N. W. 383.)

1. Fraud—Action—Complaint—Sufficiency.

   A complaint which alleged that plaintiff owned land and that defendant owned a note secured by corporate stock, that defendant induced plaintiff to trade his land for the note and stock, and as inducement thereto, and with intent to defraud, defendant falsely represented that he had investigated the financial condition of the maker of the note and the corporation, and that the said maker was financially responsible and worth $30,000 over and above all indebtedness, that the corporation owned property worth $40,000 and was out of debt,

while in fact said maker was then insolvent and failed to pay the note, that the corporate stock was valueless and the corporation insolvent, states a cause of action for fraud and deceit; defendant's statement that he had investigated the corporation's condition, and that of the maker of the note, implying a knowledge on his part of the actual financial condition of such person, thus precluding him from claiming that his representations were innocently made.

2. **Same—Damaging Misrepresentations.**

While the question of value of property bartered is largely matter of opinion, there may be cases where such representations would constitute good ground for an action of deceit; and, **held**, that where a defendant who exchanged a note and corporate stock securing it, for plaintiff's land, represented that the maker of the note held certain property free from incumbrance, and that the corporate property whose stock was pledged as such security was unincumbered, the falsity of such representations will support an action for fraud.

3. **Fraud—Time of Accrual of Action and Damages.**

Where defendant by false representations induced plaintiff to exchange land for a note secured by corporate stock, plaintiff's right of action for damages for the fraud accrued immediately, and an action could be maintained prior to maturity of the note; the question to be determined being its true value at time of the exchange and not its value at maturity.

4. **Same—Conditions Precedent—Rescission—Immaterial Allegations.**

Where defendant induced plaintiff to take a note secured by corporate stock in exchange for his land, a tendor of the dividends paid on the stock, which stock was worthless, is not a condition precedent to an action for damages for misrepresentations, defendant having conveyed the land so that rescission of the contract would have been unavailing; and an allegation in the complaint that plaintiff offered to rescind and tendered back the note and dividend is unnecessary, as it served no other purpose than to show plaintiff's good faith.

5. **Same—Misrepresentations as to Value—Opinion.**

Where defendant induced plaintiff, by misrepresentations, to trade his land for a note secured by corporate stock of a milling company, and plaintiff, in going with defendant to inspect the mill property, informed him that he knew nothing about mill property and would have to rely wholly on defendant's statement as to its value, **held**, the parties were not dealing with equal means of knowledge, and defendant's misrepresentations as to its value will be considered representations of facts and not mere statements of opinion, and so will support an action for fraud.

**6.   Appeal—Error—Review—Verity of Evidence—Conflict.**

Where evidence is conflicting, a verdict must, on appeal, be taken as establishing as true the testimony of the successful party.

**7.   Witnesses—Examination—Leading Questions—Judicial Discretion.**

A question is not leading merely because it may be answered "yes" or "no;" and, held, that in an action for damages for fraud perpetrated in an exchange of property, questions asked plaintiff in direct examination, such as "Did you rely on defendant's statement that the maker was worth $30,000 and financially able to pay the note?" are not necessarily leading, and may be properly allowed in discretion of the court; although a better form of question would have been: "Did or did you not rely," etc.

**8.   Witnesses—Examination—Scope of Cross-examination—Redirect.**

Where, in an action for damages for fraud perpetrated by defendant in inducing plaintiff to exchange land for a note secured by corporate stock, plaintiff on cross-examination was asked whether he did not borrow money from a bank on the note as collateral, plaintiff, having answered in the affirmative, might on re-direct examination testify as to the whole transaction, and that in securing the loan he informed the banker of defendant's representations.

**9.   Fraud—Action—Evidence—Value of Plaintiff's Exchanged Property.**

In such action, evidence of the value of plaintiff's land exchanged for the note and corporate stock, is admissible, the value parted with by plaintiff being one of the elements of the transaction.

**10.  Fraud—Evidence—Hearsay—Bankruptcy Proceedings.**

In a suit for damages for misrepresentations by defendant, thus inducing plaintiff to trade land for a note secured by corporate stock, certified copies of bankruptcy proceedings against maker of the note and such corporation, are admissible, it appearing that the financial condition of those parties was the same at time of the exchange as at date of bankruptcy proceedings. Held, further, that such evidence was not hearsay.

**11.  Evidence—Clerk's Certificate to Proceedings—Federal Court—Judicial Notice.**

Certified copies of proceedings in federal court for district of South Dakota, when duly attested by the clerk, are admissible in evidence in South Dakota courts without certification of the federal judge that they are in due form, since the Supreme Court will take judicial notice of all laws, whether state or federal, in force within the jurisdiction, and federal courts exercising jurisdiction within this state are, under Section 905, Rev. Stat. U. S., and Ch. 148, Laws 1911 of this

state, regarded as domestic courts; and said federal and state statutes are not applicable to and not within the reason of the rule requiring a judge's certificate as to due form of clerk's certificates to judicial records of any court, state or federal, exercising jurisdiction within the territorial limits of this state.

Gates, J., not sitting.

(Opinion filed October 23, 1913.)

Appeal from Circuit Court, Lyman County. Hon. WILLIAM WILLIAMSON, Judge.

Action by J. A. Ganow against George M. Ashton, to recover damages for alleged fraud and deceit in exchange of properties. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Brown & Brown,* for Appellant.

The complaint does not allege or show any intent on part of defendant to defraud or deceive plaintiff. The representations must not only be false in fact and cause loss to the plaintiff, but the defendant must have known they were false, and made them with intent to deceive the plaintiff. Marsh v. Falker, 40 N. Y. 562.

The complaint does not state facts sufficient to constitute a cause of action, and discloses no method for ascertaining the damages, if any, which the plaintiff suffered.

The court erred in permitting the asking of grossly leading questions.

While the allowance of leading questions is generally in the discretion of the trial court, yet when such questions are directed to the substance of the matter in controversy and give the examining party an improper advantage, their allowance will be reversible error. John A. Tollman Co. v. Bowerman, 5 S. D. 197.

The court erred in allowing plaintiff, on re-examination, to testify that at the time he borrowed this money he told the banker of the statement Mr. Ashton had made to him about the paper. This testimony was hearsay, and called for the conclusion of the witness.

The court erred in admitting evidence of the value of the land which the plaintiff traded to the defendant for the note and the stock. This evidence was wholly incompetent, irrelevant and immaterial and inadmissible under the pleadings, and because it furnished no measure of damages in this case.

The court erred in overruling defendant's objection to the reception in evidence of Exhibit "V." McPherson v. Julius, 17 S. D. 98; Chapman v. Green, 18 S. D. 505; Gilman v. Carpenter, 22 S. D. 123.

There was no certificate of the judge that the attestation was in due form as provided by section. 905 of the Rev. Stat. U. S., and section 529 of the Code Civil Proc. of South Dakota, as revised by chapter 148 of the Laws of 1911; and no foundation was laid for its introduction.

The undisputed evidence shows that all statements alleged to have been made by the defendant to the plaintiff as misrepresentations in this action were matters of opinion only, and not matters of fact; and misrepresentation of matters of opinion furnishes no ground for a cause of action for fraud or deceit. 20 Cyc. 17; 14 A. & E. Enc. of Law (2d. Ed.) 34; Deming v. Darling, (Mass.) 20 N. E. 107; Heyrock v. Surerus, 9 N. D. 28, 81 N. W. 36; Hoffman v. Wilhelm, (Ia.) 27 N. W. 483; First National Bank of Cheyenne v. Swan, (Wyo.) 23 Pac. 743.

Plaintiff undertook to and did make an investigation of the facts and conditions with reference to the note and security for which he was trading, and having made such investigation, he cannot be heard to say that he relied upon the representations of the defendant and not upon his own investigation. 14 A. & E. Enc. of Law (2d Ed.) 112; Southern Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. Rep. 881, at p. 887; Farrar v. Churchill, 135 U. S. 609, 10 Sup. Ct. Rep. 771, at p. 773.

Where the facts lie equally open to both parties with equal opportunities of examination, and the vendee undertakes to examine for himself without relying on the statement of the vendor, it is not evidence of fraud that the vendor knows facts not known to vendee, and conceals them from him. Hall v. Thompson, 1 Smedes & M., 443 (cited in Farrar v. Churchill, supra); 2 Pom. Eq. Jurisprudence, Sec. 892; Wyman v. Wilmarth, 1 S. D. 172.

*J. E. House,* for Respondent. No Brief.

McCOY, J. This is an action for fraud and deceit. There was judgment and verdict for plaintiff and defendant appeals.

Plaintiff by his complaint alleged that he was the owner of a certain half section of land, situated in Lyman county, of the value of $5,400 over and above incumbrances; that defendant was

the owner of a certain promissory note for $5,900, dated October 1, 1909, and due October 1, 1914, executed by one Moore to defendant in consideration of the sale by defendant to Moore of 30 certain shares of the capital stock of the Armour Roller Mill Company, a corporation, and the possession of which shares of stock was retained and held by defendant as security for the payment of said note; that defendant proposed to trade said note and security to plaintiff for said land; that on the 4th day of April, 1910, plaintiff consented to said trade and deeded said land and paid $250 in cash to defendant for said note and security, and defendant thereupon delivered said note and shares of stock to plaintiff; that as an inducement to procure plaintiff's consent to said trade, and with intent to cheat and defraud plaintiff, defendant represented and stated to plaintiff that said Moore was financially responsible and able to pay said note, that he was worth the sum of $30,000 over and above all indebtedness; that said Moore lived in and occupied a house, which defendant showed plaintiff, and represented that said house cost $10,000 to build and that the same was clear and free from incumbrances and that said Moore was good for said note without security; that defendant, to induce plaintiff to make said trade, further represented and stated to plaintiff that said Armour Roller Mill property was then worth the sum of $40,000; that said mill was out of debt and had always paid off its indebtedness out of its business and had in addition thereto paid a dividend of $50 each month on each 30 shares of its capital stock; that defendant had looked the matter up and found everything clear, meaning that there was no indebtedness or incumbrances outstanding against said Moore or said mill corporation; that said representations were in fact false and fraudulent in that said Moore was not then financially responsible and able to pay said note and was not worth $30,000 over his indebtedness but was then wholly insolvent and indebted largely in excess of his assets, and that the said house in which Moore resided was incumbered by mortgages aggregating $7,000; that said mill property was not in fact worth $40,000 but was in fact worth not to exceed $9,000; that said mill was not then out of debt and did not pay off its indebtedness out of its business; that said mill for a long time prior thereto was indebted in the sum of $15,000, as defendant well knew, and said mill company

did not pay a dividend of $50 each month on each 30 shares of its stock but did in fact pay $50 per month to each holder of 30 shares of its stock out of the assets of the company; that said mill corporation was insolvent and subsequently went into bankruptcy, and said shares of stock are worthless, and said Moore has refused to pay said note or any of the interest thereon; that plaintiff relied on the statements of defendant in making said trade and was thereby misled, deceived, injured, and defrauded, to plaintiff's damage in the sum of $5,825; that plaintiff, as soon as he ascertained the facts with reference to said transaction, revoked and rescinded said trade and offered to return to defendant and tendered to him said note and shares of stock and demanded that defendant return said land—all of which was by defendant refused.    Wherefore plaintiff demanded judgment for $5,825, damages and costs.    To this complaint defendant made answer admitting said trade and exchange and generally denying the other allegations of said complaint.    On the trial defendant objected to the introduction of any evidence on the ground that the complaint does not state facts sufficient to constitute a cause of action. The objection was overruled, and defendant excepted.

[1] This ruling of the court is now urged as error.    We are of the opinion that the court ruled correctly; that, while this complaint is not so specific and certain as might have been, as against attack of this character it is sufficient.    There seems to be some contention made by appellant that the complaint does not show any intent on the part of defendant to defraud and deceive; that there is nothing in the complaint to indicate that defendant knew of the falsity of his alleged representations other than as to the indebtedness against the mill.    It appears from this complaint that defendant represented to plaintiff that he had investigated the financial standing of the mill corporation and of said Moore and had ascertained that there was no indebtedness or incumbrance against them.    If this is true, it necessarily implies knowledge on the part of defendant as to the financial standing of both the mill and Moore; and knowing their financial standing and representing them to be out of debt, when as a matter of fact they were not, it does not then lie in his mouth to say that he did not intend to thereby deceive or defraud plaintiff or that he had no knowledge of the falsity of such statements.    The allegations of this com-

plaint are that defendant with intent to cheat and defraud plaintiff made such representations. This is a sufficient allegation of knowledge of falsity and intent to cheat or deceive. 20 Cyc. 99.

[2] It is also contended by defendant that the representations or statements alleged to have been made by defendant were no more than expressions of opinion upon the questions of value and therefore are not such representations as would constitute a basis for an action for deceit. While the question of the value of property is largely a matter of opinion, and although while a person during a business transaction or even as a witness on oath, when he swears to the value of an article of property, only states his opinion, still we are of the opinion that there may be cases where a representation purely as to value would constitute good ground for an action of deceit; but in this case the representations, as we view them, go further than purely to a question of value. When a person represents that there is no incumbrance or indebtedness existing against a party or against property, that surely is not a matter of opinion as to value but a statement of positive fact which would tend to materially influence a party seeking to trade for or purchase such property. The evils that resulted from the alleged representations in this case arise from the existence of indebtedness against the property rather than from a lack of value. If there had been no existing indebtedness against Moore or against the mill the property of either would have been sufficient to satisfy the note in question. It was the statement concerning the incumbrances that did the damage to plaintiff.

[3] Again appellant contends that because the note is not yet due plaintiff has no cause of action for deceit prior to the maturity thereof. We are of the opinion that this contention is not tenable. When an action is based on a breach of contract by reason of fraud and deceit in the making of such contract, the breach for which the action lies occurs at the time the contract is made. Subsequent events or conditions are immaterial. If the note was good at the date of the contract, it might be wholly worthless at maturity, and plaintiff would then have no cause of action. The real issue in this case involves the true value of the

note in question at the time plaintiff traded therefor and not its value at the time when such note became due.

[4] Appellant also contends that, because plaintiff did not offer to return the dividends or payments made to plaintiff on the shares of stock, plaintiff cannot maintain this action. This is not an action for rescission but an action for damages. It appears in the evidence in this case that, at the time plaintiff offered to rescind said contract and demanded his land back,-defendant told him that he (defendant) had disposed of the land and could not return it. It necessarily follows from this situation of affairs that rescission was impossible and would have been unavailing and that plaintiff's only remedy was for damages. The allegations of the complaint that plaintiff offered to return the note and offered to rescind only go to show plaintiff's good faith and were unnecessary for any other purpose. The cause of action alleged is purely for damages arising from a breach of contract wherein plaintiff relies on the contract and not on rescission.

[5, 6] At the close of plaintiff's evidence, and again at the close of all the evidence, defendant moved the court for a directed verdict, which motion was denied, and defendant excepted and now urges such ruling as error. Some of the questions raised by this motion have been disposed of in connection with the objection to the introduction of any evidence under the complaint. Plaintiff testified that defendant made to him the representations and statements substantially as alleged, and further testified: "We went to Armour to look over the property. On the way down I told him: 'I don't know anything about mill property at all. It is something I have had no dealing with, and I will have to rely wholly on your statement.' I was at the mill some 20 minutes. He told me he had made an examination of the property when he dealt for it and found it clear; and he said everything was clear. He showed me Moore's house and said it cost in the neighborhood of $10,000 and that it was comparatively free; there was no debt on it at all. I relied on these statements. I would not have made the trade if it had not been for these statements." Appellant contends that his statements as to the value of the properties in question was purely a matter of opinion and that a cause of action for deceit will not lie based on such statements. "In accordance with the rule of caveat emptor, if the purchaser has equal means

of knowledge with the vendor and deals with him at arm's length, the latter's representations as to the value of the property are usually deemed mere expressions of opinion and are not actionable, although false and fraudulent. But it cannot be said as a matter of law that the value of property to be sold is never a material fact. Representations as to the market value of propetry of the kind to be sold have been held to be statements of fact, not of opinion, and to be actionable where the purchaser is ignorant of the true market value or where the parties expressly make the truth of the seller's statements an essential element of the bargain." 20 Cyc. 51. In this case plaintiff and defendant were not dealing at arm's length with equal means of knowledge with reference to the value of mill property. For the purposes of this appeal, after verdict in his favor, the testimony of plaintiff must be taken as true. When plaintiff told defendant that he was ignorant about mill property and would have to rely wholly on the statements of defendant with reference thereto, the truth of such statements of defendant then became an essential element of the bargain and not mere expressions of opinion ;and, if defendant's statements turned out to be materially false, they furnished sufficient basis for an action for fraud and deceit. The only property of Moore about which there was any statement of value was the house. There does not seem to be any contention on the part of respondent that the house was not worth $10,000 but that the false representation was in relation to the incumbrance thereon.

[7] Appellant contends that the judgment should be reversed because the court erred in permitting the asking of grossly leading questions. The following are the questions on which appellant bases the assignments of error: "Did you rely on the statement made by Mr. Ashton that the mill was entirely out of debt?" "Did you rely on Mr. Ashton's statement that Mr. Moore was worth $30,000 and financially able to pay this note?" "Did you rely on the statement that his house was worth $10,000 and clear from all incumbrances?" "Would you have made this trade if it had not been for these statements?" We are of the opinion that not one of these questions is leading within the reason of the rule. Merely because a question may be answered by "yes" or "no" does not make it open to the objection that it is leading

unless the form of the question suggests the desired answer. If the question had been in this form, "You relied, did you not, on the statement of Mr. Ashton that Mr. Moore was worth $30,000 and financially able to pay this note?" it would have been objectionable. Jones, Ev. 815. The questions would have been in better form if they had been as follows: "Did or did you not rely on," etc. But as the questions were formed there was no suggestion as to whether the answer should be "yes" or "no," unless by inflection of counsel's voice, and it was wholly within the discretion of the trial court to permit or disallow such questions. Wigmore, Ev. §§ 770-772. There were other questions which to some extent were leading in their nature, but we are of the opinion they furnish no excuse or error for reversal of judgment.

[8] On cross-examination appellant's counsel asked plaintiff if, after he got possession of the note, he had not borrowed $1,000 thereon as collateral from a bank at Mitchell, and plaintiff answered that he did. It is apparent that appellant's objection in bringing out this fact was to infer that the note was of some value. On redirect examination plaintiff was permitted to testify over objections as to the transaction with the bank and as to the conversation he had with the banker during which he related the said representations made by defendant. Appellant objected to this testimony on the ground that it was hearsay and now urges the ruling of the court overruling the objection as error. Appellant brought a part of this bank transaction into the case and opened the door for plaintiff to show the entire transaction. If it was competent for defendant to bring out this testimony on cross-examination, it certainly was proper for plaintiff to show the circumstances under which the bank took this note as security.

[9] Appellant next contends that the court erred in permitting in evidence, over defendant's objections, evidence of the value of the land traded by plaintiff to defendant for the note in question. We are of the opinion that this contention is also untenable. The value parted with by plaintiff was one of the elements of the transaction and would have a bearing upon the issue as to whether or not defendant, as a matter of fact, made the alleged representations. 20 Cyc. 114; Thompson v. Hardy, 19 S. D. 91, 102 N. W. 299.

[10] Appellant also assigns as error the admission in evidence of the certified copies of the bankruptcy proceedings against said Moore and said mill corporation, which bankruptcy proceedings were had in the year 1911. Appellant objected to this evidence on the ground that there was no foundation laid; that the same was irrelevant and incompetent and hearsay. There was testimony tending to show that the financial conditions of Moore and the mill were substantially the same in April, 1910, at the time of said trade, as at the time of bankruptcy. We are of the opinion that this evidence was material and not hearsay.

[11] It is also urged as error the admission of the records in the bankruptcy matter before the federal District Court for the District of South Dakota on the ground that such records were not properly certified in that there was no certificate of the judge of said federal court certifying that the certificate of the clerk of said court was in "due form." We are of the opinion that the certificate of the judge as to "due form" of the certificate of the clerk is not necessary when the clerk is an official of a domestic court exercising jurisdiction within the territorial jurisdiction of this court. This court will take judicial notice of all laws, both state and federal, that are in force and applicable within this jurisdiction. This court will take judicial notice as to whether or not the certificate of the clerk of the federal court for the District of South Dakota is in due form, just the same as if it were a certificate of a clerk of one of the domestic state courts of this state. Within the reason of the rule of section 905, Rev. St. U. S. (U. S. Comp. St. 1901, p. 677), and chapter 148, Laws 1911 of this state, federal courts, exercising jurisdiction within this state, are regarded as domestic courts. The reason for the rule requiring the certificate of the judge as to the due form of the clerk's certificate is that the court in which the document is offered in evidence is not presumed to know or take judicial notice of the laws in force or what is "due form" in another state or foreign jurisdiction. 3 Fed. St. Ann. 37, note to section 905, U. S. Rev. Statute; Gould, etc., Tuckers' Notes on section 905, U. S. Statute, p. 280; Turnbull v. Payson, 95 U. S. 418, 24 L. Ed. 437; Trigg v. Conway, Hempst. 538, Fed. Cas. No. 14,172; Catlin v. Underhill, 4 McLain, 199, Fed. Cas. No. 2,523; Kinseley v. Rum-

bough, 96 N. C. 195, 2 S. E. 174; 17 Cyc. 346. Section 905, Rev. U. S. Statute, and chapter 148, Laws of 1911, are not applicable to and not within the reason of the rule requiring a judge's certificate as to due form of the clerk's certificate to judicial records of any court, either state or federal, exercising its jurisdiction within the territorial limits of this state.

Various assignments of error are made, based on the reception or rejection of evidence and on the instructions to the jury, all of which have been carefully considered, and it will serve no useful purpose to further refer thereto. We are satisfied that there was sufficient evidence to sustain the verdict and judgment; that the instructions to the court were fair and properly submitted the issues; and that no prejudicial or other error appears sufficient to warrant a reversal.

The judgment and order appealed from are affirmed.

GATES, J., not sitting.